Rebecca Jane HORN, Appellee,

v.

**Anthony Lee HORN, Appellant.**

**No. 60024.**

Court of Appeals of Oklahoma, Division 4.

Jan. 22, 1985.

Released for Publication by Order of the Court of Appeals Feb. 16, 1985.

James C. Bass, Porta, Bass & Bass, P.C., El Reno, for appellee.

Fenton R. Ramey, Ramey, Biehler & Miller, Yukon, for appellant.

BRIGHTMIRE, Presiding Judge.

After helping raise two children, the 38-year-old woman asked the court to dissolve her 20-year-long marriage to the defending man. The court did so. He also divided the marital estate and granted the woman an alimony judgment.

In his appeal the man does not complain of the divorce but of the property division and the alimony judgment. The former, he says, inequitably deprives him of a fair share of the property and the latter is excessive and punitive. We agree and modify both the property and the alimony judgment.

### I

The net value of the estate accumulated by the parties by the time of trial was somewhat in dispute. Two principal differences center around the value of the homestead and the amount of the parties' indebtedness.

The homestead consisted of a 10-acre tract fronting on U.S. Highway 66 near El Reno, Oklahoma. The parcel was some 322 feet wide and extended northward about 1,351 feet. At the north end of the property was an attractive 1,721-square-foot brick rambler type home.

An appraiser hired by the woman in 1983 placed a $60,000 value on the land and a $55,000 value on the house, or a total value of $115,000. The appraiser achieved the

$55,000 house amount by using a cost of construction figure of $32 per square foot and multiplying this by the square footage. The man's appraiser, on the other hand, was an experienced real estate associate who placed a value of $70,000 on the land and figured fair market value of the house at the going rate of $45 to $50 per square foot to reach a value of between $77,000 to $86,000. The total homestead value reached by this witness was therefore between $147,000 and $156,000, or some $32,000 to $41,000 higher—a substantial difference. The trial court gave the house to the woman along with half of the land. The man complains vigorously about this.

With regard to the debts, the man's evidence indicates that the woman's figure of $48,638 contained in her prepared net worth statement was about $7,250 short of the correct amount because it failed to include that much accrued interest on three bank loans.

Using the woman's figures the gross estate was about $153,000 and the net estate was $104,000. The man, on the other hand, adduced evidence that the gross estate approximated $193,000 and the net estate was right at $137,000.

The value of the property awarded to the woman had a gross value as follows:

| | Her figures | His figures |
|---|---|---|
| Residence and five acres | $ 80,000 | $ 116,000 |
| 1971 Javelin | 250 | 1,500 |
| Household goods | 7,500 | 10,000 |
| | $ 87,750 | $ 127,500 |
| Less debt she is to pay | (7,000) | (7,000) |
| Net Award | $ 80,750 | $ 120,500 |

The value of the property awarded to the man is as follows:

| | Her figures | His figures |
|---|---|---|
| Five acres of land | $ 35,000 | $ 35,000 |
| Vehicles, farm equipment and office furniture | 30,532 | 30,332 |
| | $ 65,532 | $ 65,332 |
| Less debts he is to pay | (41,638) | (48,897) |
| Net Award | $ 23,894 | $ 16,435 |

■ These figures demonstrate that regardless of which party's values are used, the division of property is unfair and inequitable and amounted to an abuse of discretion. We see no reason why the division should not be at least equal. Because there was some question about whether the man was hindered in his effort to obtain and present persuasive evidence concerning asset values and whether the trial judge took into consideration all of the indebtedness of the parties, we are of the opinion that it would be best to vacate the property division order and remand the matter back to the trial court for further consideration.

II

The man's other complaint is that the support alimony award of $21,000 was unjustified for three reasons: (1) it was not shown that the healthy 38-year-old woman needed it; (2) she sought more to live on than the whole family of four lived on before the two children reached adulthood; and (3) the evidence indicates that the defendant is unemployed and without ability to pay.

■ In probing the record for indicia of both need for and, if appropriate, quantum of support alimony, we consider evidence of

the parties' past work experience, their present financial condition, their health, and their prospects for future income.

Relevant evidence surrounding the need factor are these. The woman has worked in the past. There is evidence she is interested not merely in a job but a "career." She is attractive, meets the public well, and enjoys good health. The man says she told him not long before she filed this lawsuit that she had a job—a position—as vice president of a company importing dishes. Her salary was $35,000 a year plus various perks. The woman confirmed the job but says she did not say she was to be a vice president but was to be on the sales staff and be furnished a car. The man became upset, he says, "when the job appeared to be mostly going out at night and discussing things in a bar." The woman says, however, the job lasted only a day because the man "came in and drug [her] out of [the office]." However, she evidently lost one job because she refused to trim her fingernails when her employer requested her to do so. Moreover, there is no evidence that she wants or plans to attend school and acquire more marketable and income-enhancing skills.

On the other hand, the man has been a farmer. He is not now. Several years ago the man was able to make a good living. Lately the economy has not been good to farmers. They are suffering financially and the prospects for an improvement in farm income in the near term appear bleak. The man gave up farming in 1982 and at the time of trial was unemployed but had applied for work at various places.

■ The financial condition of the parties depends, of course, to a large extent on how this lawsuit finally comes out. Right now the woman is in a better cash position. The man has had the debt burden to bear. The woman has had the house and the furnishings. The man has had to find other living accommodations. The woman says she needs $1,405 a month to live. Maybe so. But according to the evidence, the whole family got by on less before the marriage foundered on the reefs of discord. Moreover, at the beginning of this lawsuit, she asked for $1,000 a month temporary support, but received only $500 a month.

Under all the circumstances we think the woman's showing of need lacks strength and certainly fails to demonstrate a need to be supported for five years. At the most she may require some financial help during a period of readjustment. We see nothing in the record, however, that would call for such period to extend beyond twelve months.

### III

The property division and alimony orders are vacated and the cause is remanded with directions to grant the man a rehearing with regard to both orders. The divorce decree is otherwise affirmed.

Affirmed in part, reversed in part, and remanded.

RAPP and STUBBLEFIELD, JJ., concur.